UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| RONALD F. BACON,  | No. 15-cv-4477 LB |
| Plaintiff, | **ORDER OF SERVICE** |
| v. | [Re: ECF Nos. 1, 2] |
| JEFFERY BEARD; et al., | |
| Defendants. | |

## INTRODUCTION

Ronald F. Bacon, an inmate at Salinas Valley State Prison, filed this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983. He consented to proceed before a magistrate judge. (ECF No. 1-1 at 16.)[1] This action is now before the court for review of Mr. Bacon's complaint. This order finds a cognizable § 1983 claim for an Eighth Amendment violation, directs the U.S. Marshal to serve process on five doctor-defendants and dismisses the other two defendants.

## STATEMENT

The complaint concerns prison medical staff's response to Mr. Bacon's medical needs. Mr. Bacon is 60 years old, and has been in prison for 35 years, since he was 25 years old. (ECF No. 1-1 at 6, 10.) Since December 24, 2013, he has been incarcerated at Salinas Valley State Prison, and

---

[1] Citations are to the Electronic Case File ("ECF"); pin cites are to the ECF-generated page numbers at the tops of the documents.

before that was incarcerated at Pleasant Valley State Prison. (ECF No. 1 at 12.)

The complaint alleges the following:

Mr. Bacon has had chronic pain, which he has been reporting since the end of the 1990s. (*Id.* at 8.) Most of the early part of his complaint focuses on shoulder pain, although he also focuses on foot and ankle pain later in the complaint. He attached to his complaint a list of at least ten different medications he has been given for pain in the last fifteen years. (ECF No. 1-14 at 7.)

While Mr. Bacon was incarcerated at Pleasant Valley, Dr. John Chokatos failed to adequately address Mr. Bacon's pain management needs. Dr. Chokatos cancelled a request for a CT-scan of Mr. Bacon's shoulder and discontinued certain pain relief medications (e.g., indometacin and gabapentin) that had been helpful to Mr. Bacon. (*Id.* at 8-12.) Dr. Chokatos also said that he would order pain relief medications for Mr. Bacon after shoulder surgery in October 2012, but failed to follow through to make certain that Mr. Bacon received the pain medications. (*Id.* at 11-12.)

Mr. Bacon arrived at Salinas Valley on December 24, 2013 and requested pain relief; a nurse told Mr. Bacon he would be seen soon but said she could not do anything else at that time. On January 17, 2014, a nurse gave him some Tylenol and made a referral for him to see a doctor. On February 4, 2014, Mr. Bacon finally saw a doctor. Dr. Gamboa only prescribed ibuprofen. Mr. Bacon "knew it would not do [him] and good and [he] had been on ibupro[f]en for so long [he] 'knew' it was hurting [his] stomach and liver." (*Id.* at 13.)

On February 11, 2014, Mr. Bacon was given an informed consent agreement for opioid treatment, which he filled out and returned to the medical staff. Nonetheless Dr. Gamboa did not put him on opioids and "continued on a course of treatment that was [ine]ffective." (*Id.* at 14.)

A MRI was done on Mr. Bacon's shoulder because defendant Dr. Kumar, the chief medical executive at Salinas Valley denied a doctor's request for a CT-scan. (ECF No. 1 at 16.) The MRI was useless due to the presence of metal implants in his shoulder. (*Id.*)

Mr. Bacon was seen by Dr. Posson on June 5, 2014, who noted concerns about Mr. Bacon's request for morphine. Mr. Bacon believes the concerns were unjustified because he was only following up on Dr. Gamboa's statement that he was a candidate for opioid treatment and other medications had been disallowed. (*Id.*) Dr. Posson requested on June 10, 2014, that Mr. Bacon be

1 administered gabapentin, but that was denied by Dr. Kumar.  (*Id.*).

2 The physical therapy that Mr. Bacon had to ask for repeatedly eventually was granted but was unhelpful because it consisted of only a handout with instructions to do exercises in his cell.  By contrast, at Pleasant Valley he had received better physical therapy, such as deep heat treatments and ultrasound treatments.  (ECF No. 1-1 at 1.)

Mr. Bacon alleges that he was subjected to drug tests on several occasions, including in October 2014 and December 2014, apparently in connection with his efforts to be approved for opioid pain medications.  (ECF No. 1-1 at 2.)  The drug testing offended him because he had no history of drug use in 34 years.  (*Id.* at 1, 9-10.)

Dr. Posson "knew [Mr. Bacon] was in pain and knew [he] had been recommended for opioid ther[a]py and determined not to begin treatment because he said Dr. Kumar C.M.E. would just deny any request as she denied gabapentin."  (*Id.* at 3.)  After Mr. Bacon laid down in the yard in pain and his shoulder was x-rayed on or about December 30, 2014, showing "acromioclavicular joint disease" in his left shoulder, Dr. Posson continued him on "an ineffective course of treatment."  (*Id.* at 4.)

Mr. Bacon fell in his cell and couldn't walk on January 9, 2015.  He was given Tylenol-3 and crutches, and returned to his housing unit.  On January 16, 2015, he was prescribed morphine sulfate and finally had pain relief.  (*Id.* at 5.)  The prescription expired and was renewed by Dr. Posson for 10 days on January 30, 2015, and 14 more days on February 13, 2015.  (*Id.* at 6-7.)  Dr. Posson told Mr. Bacon that Dr. Kumar was the problem, as Dr. Kumar was refusing to allow Mr. bacon to be put on gabapentin or Cymbalta.  (*Id.*)  Dr. Kumar recommended Elavil for Mr. Bacon "knowing [he] had an allergic reaction to Elavil."  (*Id.* at 4, 7)

Mr. Bacon fell in the shower area on March 13, 2015.  This was due to the absence of grab bars, which would have been avoided if he had been afforded an ADA shower with grab bars.  (*Id.* at 8.)  Mr. Bacon states, however, that he had not requested access to an ADA shower because he was new to the facility in which the incident took place.  (*Id.*)

On April 4, 2015, Mr. Bacon fell in the yard due to pain.  He was given his wheelchair by correctional officers, but was not provided pain medications.  On April 13, 2015, Mr. Bacon was seen by Dr. Birdsong, who "refused [Mr. Bacon's] request for more adequate pain medication."  (*Id.*

1   at 11.) Dr. Birdsong also decided that Mr. Bacon's wheelchair and sling for his arm had to be
2   discontinued. Dr. Birdsong also rejected requests for an MRI for Mr. Bacon's left ankle pain, a
3   specialist, physical therapy and further tests for occult blood found in Mr. Bacon's urine. (*Id.*) Dr.
4   Birdsong even tried to get a nurse and guards to take Mr. Bacon's wheelchair, but they refused. (*Id.*
5   at 12.)

6   On April 24, 2015, Mr. Bacon was given Effexor, causing him to feel strange and have
7   delusions, apparently because it was an antidepressant not compatible with the perphenazine he was
8   taking at the time. (*Id.* at 12-13.) The Effexor was discontinued so Mr. Bacon could resume his
9   normal medication on June 17, 2015. (*Id.* at 13.)

10  A CT-scan was eventually done on Mr. Bacon's abdomen due to the occult blood found in his
11  urine. Cysts were found on his liver. Dr. Birdsong is aware of Mr. Bacon's "compromised liver and
12  is still continuing [him] on haz[a]rdous liver threatening medications." (*Id.*)

## ANALYSIS

### I. REVIEW OF COMPLAINT

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id*. at § 1915A(b). *Pro se* complaints must be liberally construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

### A. Eighth Amendment Claim

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Deliberate indifference to a prisoner's serious medical needs amounts to the cruel and unusual punishment prohibited by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the

deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For the objective prong of the deliberate indifference test in a medical care claim, the plaintiff "must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citation and internal quotation marks omitted). For the subjective, or "deliberate indifference" prong, the plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (citation and internal quotation marks omitted).

Liberally construed, the *pro se* complaint alleges a cognizable § 1983 claim against Dr. Chokatos, Dr. Kumar. Dr. Gamboa, Dr. Posson and Dr. Birdsong for violating Mr. Bacon's Eighth Amendment rights based on their responses to his pain management needs.

The requirement that Mr. Bacon undergo drug screening tests does not give rise to any liability for any defendant under the Eighth Amendment. Mr. Bacon does not allege a serious medical need to avoid testing, and does not allege facts suggesting deliberate indifference to a medical need in having the tests done. Regardless of Mr. Bacon's protestations that he was not a substance abuser, his complaint and exhibits plainly show that a legitimate basis for the tests: he was repeatedly seeking medications for pain and was being considered for administration of opioid medications.

The complaint does not state a claim against CDCR Director Jeffery Beard or warden Muniz, who apparently were named as defendants merely based on their roles as head of the prison system and head of the prison at which Mr. Bacon is incarcerated. These two defendants are not alleged to have played any actual role in the medical care of Mr. Bacon. "Liability under § 1983 arises only upon a showing of personal participation by the defendant. *See Taylor v. List*, 880 F.2d, 1040, 1045 ((th Cir. 1989). There also is no respondeat superior liability in a § 1983 action. *See Taylor*, 880 F.2d at 1045.

**B. American With Disabilities Act**

Title II of the Americans With Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA"), and § 504 of the Rehabilitation Act, as amended and codified in 29 U.S.C. § 701 *et seq.* ("RA"), prohibit

1  discrimination on the basis of a disability in the programs, services or activities of a public entity.
2  Federal regulations require a public entity to "make reasonable modifications in policies, practices,
3  or procedures when the modifications are necessary to avoid discrimination on the basis of
4  disability, unless the public entity can demonstrate that making the modifications would
5  fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

6      The elements of a cause of action under Title II of the ADA are: (1) the plaintiff is an individual
7  with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of
8  some public entity's services, programs, or activities; (3) the plaintiff was either excluded from
9  participation in or denied the benefits of the public entity's services, programs or activities, or was
10 otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or
11 discrimination was by reason of the plaintiff's disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th
12 Cir. 2002).[2] A cause of action under § 504 of the RA essentially parallels an ADA cause of action.
13 *See Olmstead v. Zimring*, 527 U.S. 581, 590 (1999); *Duvall v. County of Kitsap*, 260 F.3d 1124,
14 1135 (9th Cir. 2001).

15     Mr. Bacon has not named a proper defendant for a claim under Title II of the ADA and § 504 of
16 the RA. The proper defendant is the public entity responsible for the alleged discrimination.
17 *See Everson v. Leis*, 556 F.3d 484, 501 & n.7 (6th Cir. 2009) (collecting cases). *But cf. Eason v.*
18 *Clark County School Dist.*, 303 F.3d 1137, 1145-45 (9th Cir. 2002) (declining to decide the issue).
19 Title II of the ADA does not provide for suit against a public official acting in his individual
20 capacity. *Everson*, 556 F.3d at 501. A plaintiff also cannot assert a claim under § 1983 against
21 defendants in their individual capacities to vindicate rights created by the ADA and RA. *See Vinson*
22 *v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). Here, the proper defendant for an ADA and RA
23 claim would be the CDCR or the prison as the entity that allegedly denied Mr. Bacon his rights

---

26     [2]Monetary damages are not available under Title II of the ADA absent a showing of discriminatory intent. *See Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998). To show
27 discriminatory intent, a plaintiff must establish deliberate indifference by the public entity. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). Deliberate indifference by the entity
28 requires: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. *Id.* at 1139.

15-cv-4477 LB
ORDER      6

under the ADA and RA.

Mr. Bacon also has not alleged an ADA claim, although he mentioned the ADA in a complaint that was almost exclusively devoted to his medical care. First, he alleges that he was not in a shower with grab bars at the time he fell on March 13, 2015, but he also alleges that he was new to the facility and had not requested a shower with grab bars. (ECF No. 1-1 at 8.) Second, he alleges that his "ADA paperwork has been altered and converted into a health care appeal," but does not allege what the significance of that conversion or how it denied him any ADA rights. (ECF No. 1 at 6-7.) The ADA claim is dismissed without prejudice.

## II. THE PETITION FOR WRIT OF MANDATE IS AN EXHIBIT

After he filed his complaint, Mr. Bacon sent to the court a document entitled "petition for writ of mandate and declaratory relief." (ECF No. 2.) That unsigned document is marked on the first page as being intended for filing in the Monterey County Superior Court. (*Id.* at 1.) In his complaint, Mr. Bacon stated that he would send to this court a copy of that state court petition to show his efforts to obtain relief. (ECF No. 1-1 at 14.) This court therefore construes the petition to be an exhibit to the complaint, rather than a separate request for action in this court. The clerk shall terminate the motion at ECF No. 2 and note that the document at ECF No. 2 is an exhibit from plaintiff rather than a "motion for writ of mandate."

## CONCLUSION

1. Liberally construed, the complaint states a cognizable § 1983 claim against Dr. Chokatos, Dr. Kumar, Dr. Gamboa, Dr. Posson and Dr. Birdsong for violating Mr. Bacon's Eighth Amendment rights. All other defendants and claims are dismissed. The dismissal of any ADA claim is without prejudice to Mr. Bacon filing an amendment to his complaint in this action alleging such a claim no later than **November 27, 2015**, or filing a separate action against the appropriate entity at a later date.

2. The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the complaint, a copy of all the documents in the case file, and a copy of the "consent or declination to magistrate judge jurisdiction" form upon the following defendants:

Dr. John Chokatos (at Pleasant Valley State Prison)
Dr. Kumar (chief medical executive at Salinas Valley State Prison)
Dr. Lawrence Gamboa (at Salinas Valley State Prison)
Dr. Steven Posson (at Salinas Valley State Prison)
Dr. Edward M. Birdsong (at Salinas Valley State Prison).

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

  a.  No later than **January 15, 2016,** the defendants must file and serve a motion for summary judgment or other dispositive motion. If the defendants are of the opinion that this case cannot be resolved by summary judgment, the defendants must so inform the Court prior to the date the motion is due. If the defendants file a motion for summary judgment, the defendants must provide to the plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012). If the motion is based on nonexhaustion of administrative remedies, the defendants must comply with the notice and procedural requirements in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).

  b.  The plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon the defendants no later than **February 12, 2016**. The plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

  c.  If the defendants wish to file a reply brief, the reply brief must be filed and served no later than **February 26, 2016**.

4. The plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

> The defendants [may make] a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. [¶] Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will

be no trial.

*Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

If a defendant files a motion for summary judgment for failure to exhaust administrative remedies, he is seeking to have the case dismissed. A plaintiff faced with such a motion can oppose it using the same methods as described above for other summary judgment motions. As with other defense summary judgment motions, if a motion for summary judgment for failure to exhaust administrative remedies is granted, the case will be dismissed and there will be no trial.

   5. All communications by the plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to the defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, the plaintiff may serve a document by mailing a true copy of the document directly to the defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

   6. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

   7. The plaintiff is responsible for prosecuting this case. The plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). The plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility or is released from custody.

   8. The plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the court for consideration in this case.

   9. The clerk shall terminate the motion at ECF No. 2 and note that the document is an exhibit from the plaintiff rather than a motion.

   **IT IS SO ORDERED.**

Dated: October 30, 2015

_____
LAUREL BEELER
United States Magistrate Judge

15-cv-4477 LB
ORDER                                    10